## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER R.,[1]

                                         Plaintiff,

            v.                                             1:20-CV-1082(ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.

---

ANDREW C. ALTER, ESQ., for Plaintiff
RONALD W. MAKAWA, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

### MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 7).

## I.    <u>PROCEDURAL HISTORY</u>

On August 19, 2016, plaintiff protectively filed concurrent applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging that he became disabled on January 12, 2015. (Administrative Transcript ("T") 78–79, 262–72). His application was denied initially on December 22, 2016. (T.

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only his first name and last initial.

78–79, 133–40).  At the request of the plaintiff, Administrative Law Judge ("ALJ")
Kieran McCormack conducted a hearing on March 11, 2019,[2] at which plaintiff and
vocational expert ("VE") Robert Baker gave testimony.  (T. 33-70).  ALJ McCormack
issued an unfavorable decision on April 5, 2019, which became the Commissioner's
final decision when the Appeals Council denied plaintiff's request for review on July
23, 2020. (T. 1–5, 11–28).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI
disability benefits must establish that she is "unable to engage in any substantial gainful
activity by reason of any medically determinable physical or mental impairment which
can be expected to result in death or which has lasted or can be expected to last for a
continuous period of not less than twelve months . . . ."  42 U.S.C. § 1382c(a)(3)(A).  In
addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity
> that he is not only unable to do his previous work but cannot, considering
> his age, education, and work experience, engage in any other kind of
> substantial gainful work which exists in the national economy, regardless
> of whether such work exists in the immediate area in which he lives, or
> whether a specific job vacancy exists for him, or whether he would be
> hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections

---

[2]Plaintiff initially appeared for an administrative hearing on November 27, 2018; however that
proceeding was postponed to give plaintiff the opportunity to seek legal representation.  (T. 64–77).

404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner ] will consider him disabled without considering vocational factors such as age, education, and work experience . . . . Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see* 20 C.F.R. §§ 404.1520,

416.920.  The plaintiff has the burden of establishing disability at the first four steps.

However, if the plaintiff establishes that her impairment prevents her from performing

her past work, the burden then shifts to the Commissioner to prove the final step.  *Id.*

**B.    Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine

whether the correct legal standards were applied and whether substantial evidence

supported the decision.  *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v.

Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir.

2012).  It must be "more than a scintilla" of evidence scattered throughout the

administrative record.  *Id.*  However, this standard is a very deferential standard of review " – even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision.  *Id*.  *See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) (we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony).  However, the ALJ cannot "'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   **FACTS**

Plaintiff was 48 years old as of the date of the administrative hearing.  A college graduate with a B.A. in Art History, he lived alone in housing funded by community supportive services.  (T. 49, 51).  Plaintiff did not have a driver's license because he had failed the test three times, due to his anxiety.  (T. 52).

4

Plaintiff testified that he was diagnosed with depression and anxiety.  (T. 45). His symptoms included panic attacks, heart palpitations, dizziness, disorientation, prolonged periods of sadness, and the inability to perform the "daily duties of life."  (T. 45–46).  Plaintiff was also diagnosed with psychosis, however he testified that his symptoms were controlled by medication.  (T. 54).  Most recently, plaintiff was diagnosed with posttraumatic stress disorder, stemming from his childhood in an abusive environment.  (T. 56).

Plaintiff was admitted for inpatient psychiatric hospitalization in 2012, and then on two seperate occasions in 2014.  (T. 45).  Plaintiff's symptoms forced him to leave his retail position at a health food store, where he had worked since 2006.  (*Id*.) Plaintiff had not been hospitalized since 2014, due to his "intense regimen" of medication.  (T. 45–46).  He testified that the medication helped "to a certain extent," but he was still symptomatic "from time to time."  (T. 46).  Plaintiff's ability to focus was also "somewhat limited."  (T. 47–48).  Socially, plaintiff tended to be "passive" and "shy" around people.  (T. 48).  He became suspicious about their opinions of him. (*Id*.)  He had "one or two friends" that he spoke to on the phone.  (*Id*.)  A typical day for plaintiff included attending programming and therapy, preparing meals, engaging in social media, taking walks, running errands, taking a nap, and watching television.  (T. 49–50, 52).

Plaintiff had a history of substance abuse.  He testified that he had been sober for three years as of the date of the administrative hearing.  (T. 51–52).  Plaintiff also suffered from chronic back pain.  (T. 43).  He occasionally "put [his] back out" as a

result of sneezing, or sleeping in the wrong position.  (*Id*.)  Plaintiff took ibuprofen

three times a day.  (T. 44).  He could not lift over thirty pounds without experiencing

back spasms.  (*Id*.)

## IV.   **THE ALJ'S DECISION**

In his decision, the ALJ first found that plaintiff had not engaged in substantial

gainful activity since January 12, 2015, the alleged onset date.  (T. 13).  Next, the ALJ

found that plaintiff had the following severe impairments: lumbar degenerative disc

disease, obesity, major depressive disorder, panic disorder, and posttraumatic stress

disorder (PTSD).  (*Id*.)  At the third step, the ALJ determined that plaintiff's

impairments did not meet or medically equal the criteria of any listed impairments in

Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 15–18).

At step four, the ALJ found that plaintiff had the residual functional capacity to

perform light work, except that plaintiff had the following additional limitations:

> claimant can work at low stress jobs, defined as jobs containing
> no more than simple, routine, and repetitive tasks involving only
> simple work related decisions; with few, if any workplace
> changes; and where there is only occasional interaction with
> supervisors, coworkers, and/or the general public.

(T. 18).

Next, the ALJ determined that plaintiff was unable to perform any past relevant

work.  (T. 26).  However, at step five, using the Medical Vocational Guidelines as a

"framework," and the VE's testimony, the ALJ found that plaintiff was "capable of

making a successful adjustment to other work that exists in significant numbers in the

national economy."  (T. 27–28).  Thus, the ALJ found that plaintiff was not disabled

from January 12, 2015 through April 5, 2019, the date of the decision.  (*Id*.)

## V.   <u>ISSUES IN CONTENTION</u>

Plaintiff argues that the ALJ committed reversible error by failing to adhere to the treating physician rule, and improperly evaluating the plaintiff's residual functional capacity.  (Plaintiff's Brief ("Pl.'s Br.") at 9–19) (Dkt. No. 13).  Defendant argues that the ALJ properly evaluated the medical evidence of record, resulting in an RFC that was supported by substantial evidence.  (Defendant's Brief ("Def.'s Br.") at 4–16) (Dkt. No. 18).  For the following reasons, this court agrees with the defendant and will affirm the Commissioner's decision.

## DISCUSSION

## VI.   <u>RFC EVALUATION/TREATING PHYSICIAN</u>

### A.   **Legal Standards**

#### 1.   **RFC**

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ."  A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule.  *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at \*2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at \*2)); *Babcock v. Berryhill,* No. 5:17-CV-

00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations.  20 C.F.R. §§ 404.1545, 416.945.  *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010).  An ALJ must specify the functions plaintiff is capable of performing, and may not simply make conclusory statements regarding a plaintiff's capacities.  *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone v. Apfel*, 70 F. Supp. 2d at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004).  The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence.  *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

### 2.    Weight of the Evidence/Treating Physician

In making a determination, the ALJ weighs all the evidence of record and carefully considers medical source opinions about any issue. SSR 96-5p, 1996 WL 374183, at *2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical issues," but are "administrative findings."  The responsibility for determining these issues belongs to the Commissioner.  *See* SSR 96-5p, 1996 WL 374183, at *2.  These issues include whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's RFC; how the vocational factors apply; and whether the plaintiff is "disabled" under the Act. *Id.*

In evaluating medical opinions on issues that are reserved to the Commissioner, the ALJ must apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d).  The ALJ must clearly state the legal rules that he applies and the weight that he accords the evidence considered.  *Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing *Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation omitted)).

A treating source's opinion on the nature and severity of a claimant's impairments is entitled to controlling weight where it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence" of the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). This is known as the "treating physician rule." In *Estrella v. Berryhill*, the court

9

emphasizes the importance of a treating source's opinion in cases concerning mental impairments, as "cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence[.]" *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019) (quoting *Garrison v. Colvin*, 759 F. 3d 995, 1017 (9ᵗʰ Cir. 2014)).

If an ALJ decides not to give the treating source's records controlling weight, then he must explicitly consider the four *Burgess* factors: "(1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Estrella*, 925 F.3d at 95-96 (quoting *Burgess v. Astrue*, 537 F. 3d 117, 120 (2d Cir. 2008)). Should an ALJ assign less than controlling weight to a treating physician's opinion and fail to consider the above-mentioned factors, this is a procedural error. *Estrella*, 925 F.3d at 96. It is impossible to conclude that the error is harmless unless a "searching review of the record . . . assures us that the substance of the treating physician rule was not traversed[.]" *Id.*

### B.    Application

The thrust of plaintiff's argument challenges the ALJ's evaluation of the March 1, 2019 Psychiatric Functional Assessment prepared by Nurse Practitioner ("NP") Iris Grett and cosigned by "Supervising Psychiatrist" Abigail Herron, D.O. (T. 1280–85). Specifically, plaintiff argues that this opinion was entitled to controlling weight under the treating physician rule, based on NP Grett and Dr. Herron's relationship with the

plaintiff, in addition to the opinion's consistency with other substantial evidence of record.  Thus, plaintiff argues that the ALJ's failure to adopt the restrictive limitations opined by NP Grett and Dr. Herron was reversible error.

Both NP Grett and Dr. Herron were employed by the Institute for Family Health, where plaintiff intermittently treated with psychotherapy and medication management since December 2015.  (T. 1280).  In her March 1, 2019 opinion, NP Grett identified plaintiff's mental health diagnoses, including severe recurrent major depressive disorder with psychotic features, anxiety, nightmares and PTSD.  (*Id*.)

NP Grett opined that plaintiff had mild to moderate limitations in understanding, remembering or applying information, except that plaintiff had marked limitations in using reason and judgment to make work related decisions and in sequencing multi-step activities.  (T. 1281).  She commented on plaintiff's increased anxiety and "potential psychosis."  (*Id*.)  NP Grett went on to opine that plaintiff had marked limitations in interacting with others, citing to his increased anxiety, paranoia, and suspicion toward others.  (T. 1282).  She noted that he had issues with boundaries and limitations.  (*Id*.)  She also indicated that plaintiff had marked limitations in concentration, persistence or maintaining pace, citing to "poor concentration and focus."  (*Id*.)  Last, NP Grett opined that plaintiff had marked limitations in adapting or managing oneself, again citing to his poor concentration and focus due to high anxiety and "potential psychosis."  (T. 1283).

NP Grett noted that plaintiff was presently in supportive housing, and although

he lived alone, he received a high level of outpatient care and social services.  (T. 1284).  She stated that plaintiff did not have difficulty performing activities of daily living.  NP Grett responded "no" to this question:  whether plaintiff had "minimal capacity to adapt to [changes in environment and/or increased mental or stress-related demands], without an exacerbation of signs/symptoms and deterioration in functioning."  (*Id*.)  She opined that plaintiff had "good insight," and that his diagnoses were consistent with his symptoms and functional limitations as described.  (T. 1285).  NP Grett concluded that plaintiff's symptoms and treatment would cause him to be absent from and/or late to work more than four days per month.  (T. 1283).  Upon consideration of NP Grett and Dr. Herron's cosigned opinion, the ALJ afforded it little weight.  (T. 24).

For the following reasons, this court finds that the ALJ's evaluation of NP Grett and Dr. Herron's opinion sufficiently aligned with the treating physician rule. Although the ALJ did not explicitly discuss the *Burgess* factors in his analysis, it is clear from his decision that he considered them and otherwise provided good reasons to support his determination.

At the outset, NP Grett and Dr. Herron's specialization in the field of mental health appears to have been implicitly considered and given the appropriate weight by the ALJ.  In his written decision, the ALJ explicitly discussed their opinions together with a detailed recitation of plaintiff's mental health treatment at the Institute for

Family Health, and specifically identified the various mental health examination findings made by NP Grett.  (T. 19–22); *see* 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5).

With respect to the remaining factors, the ALJ explicitly scrutinized NP Grett and Dr. Herron's treatment history and relationship with plaintiff.  (T. 24); *see* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  The ALJ considered the fact that Dr. Herron had "never examined" plaintiff, and that NP Grett had only examined plaintiff on five occasions.  (*Id.*).[3]  Next, the ALJ concluded that NP Grett's opined limitations were not supported by, and were inconsistent with, plaintiff's treatment records from the Institute of Family Health.  (*Id.*)  In particular, the ALJ noted that

> but for subjective reports of depression and anxiety, all mental status examinations of the [plaintiff] (to include the five conducted by NP Grett), have been normal with the [plaintiff's] appearance, speech, attitude, thought process, perception, thought content, cognition, intelligence, insight and judgment all clinically evaluated as normal and with the [plaintiff] being negative for delusions, hallucinations, or homicidal or suicidal ideation, from November 2015 through the present.

(*Id.*); *see* 20 C.F.R. §§ 404.1527(c)(3)-(4), 416.927(c)(3)-(4).  The ALJ further noted significant gaps in plaintiff's mental health treatment during the alleged period of

---

[3]Although the Commissioner did not make any argument to this effect, the court seriously questions whether the signature of Dr. Herron, an acceptable medical source who apparently never treated plaintiff, transformed the opinion of NP Grett into that which is entitled to controlling weight under the treating physician rule.  *See Novaco v. Berryhill*, No. 3:16-CV-1918, 2019 WL 1404189, at *10 (D. Conn. Mar. 28, 2019) ("[T]he co-signature of a non-treating acceptable medical source alone does not transform the opinion of a treating non-acceptable medical source into one with controlling weight as a matter of law.").

disability, specifically from February 2015 through November 2015, as well as from October 2016 until April 2018. (T. 19–20).

The ALJ's evaluation of NP Grett's opinion adequately considered the relevant factors. The Second Circuit has made clear that a treating source's conclusion for certain limitations may be entitled to less-than-controlling weight, where the treating source's own notes fail to reflect such limitations. *See Monroe v. Commissioner of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (declining to afford controlling weight to treating source statement finding that claimant's psychological impairments prevented her from staying on task for most of the work day and appropriately dealing with stress and the public, where the treatment notes described claimant's mood as "stable" or "good" and reflected that claimant engaged in a wide range of recreational activities); *Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016) (finding that substantial evidence supported giving limited weight to treating psychiatrist's opinion because the opinion conflicted with his own treatment notes); *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (declining to afford controlling weight to treating source opinion stating that claimant suffered from moderate limitations due to bipolar disorder where the treatment notes indicated a few isolated instances of decompensation and showed that claimant's mental impairments were effectively managed through medication and therapy).

The ALJ also appropriately considered the inconsistencies between NP Grett and Dr. Herron's Psychiatric Functional Assessment and other substantial evidence of

record, namely the opinions of consultative examiner Alex Gindes, Ph.D.; state agency medical consultant S. Hennessey; and state agency medical consultant R. McClintock. To be sure, ALJs are cautioned "not to rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill*, 925 F.3d at 98 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)) (remanding, noting one time consultative examination may not constitute substantial evidence). However, the opinion of a non-examining source may constitute substantial evidence under the appropriate circumstances, and even "override" the opinion of a treating source. *See Camille v. Colvin*, 652 F. App'x at 28 (internal citations omitted) (the regulations permit the opinions of non-examining sources to override the opinions of treating sources provided they are supported by the evidence in the record); *Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) ("The opinion of a treating [psychologist] is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence.") (citation omitted); *Frye ex rel. A.O. v. Astrue*, 485 F. App'x 484, 487 (2d Cir. 2012) ("The report of a State agency medical consultant constitutes expert opinion evidence which can be given weight if supported by medical evidence in the record.").

Dr. Gindes's findings during his November 29, 2016 consultative examination largely align with plaintiff's recorded mental health status throughout the relevant period of disability. Specifically, Dr. Gindes found that plaintiff's sensorium was clear,

his thought processes were coherent and goal directed, his speech was fluent, and his insight and judgment were good, with no evidence of hallucinations, delusions or paranoia.  (T. 730–32).  Dr. Gindes further commented that plaintiff's attention and concentration were mildly impaired, as was his recent and remote memory.  (*Id*.)  However, plaintiff's intellectual functioning was in the normal range.  (*Id*.)  Based on his mental status examination, Dr. Gindes opined that plaintiff was moderately limited in his ability to relate adequately with others and appropriately deal with stress, but otherwise had no more than mild mental limitations.  (T. 732).  The ALJ assigned great weight to Dr. Gindes's findings regarding plaintiff's functional limitations, based on their consistency with the record as a whole.[4]  (T. 22).

The ALJ also considered the opinions of state agency medical consultants Hennessey and McClintock.  The ALJ afforded great weight to Dr. Hennessey's opinion regarding the "B" criteria, to the extent he opined that plaintiff was moderately limited in social functioning with no episodes of decompensation, as it aligned with other substantial evidence of record.  (T. 23).  However, the ALJ afforded little weight to Dr. Hennessey's less restrictive findings – i.e. that plaintiff was only mildly limited in activities of daily living and concentration, persistence, or pace – concluding that the record as a whole supported that plaintiff was "slightly more limited" in these areas.

---

[4]The ALJ assigned little weight to Dr. Gindes's conclusion that plaintiff's mental impairments "may significantly interfere with his ability to function."  (T. 22).  The ALJ noted that this conclusion was not only at odds with Dr. Gindes's generally unremarkable findings upon examination, but were further inconsistent with plaintiff's longitudinal treatment notes from mental status examinations.  (*Id*.)

(*Id.*) Dr. Hennessey also completed a mental RFC assessment, in which he opined that plaintiff appeared to be able to "perform simple and some complex tasks, sustain a pace, related to others and respond to change in a work situation."  (T. 90).  The ALJ afforded this opinion great weight, with the exception of Dr. Hennessey's opinion that plaintiff could perform some complex tasks.  (T. 23).

State agency medical consultant Dr. McClintock also reviewed the record, finding that plaintiff had moderate limitations with respect to the "B" criteria.  (T. 124). In a mental RFC assessment, Dr. McClintock further opined that plaintiff was, at most, moderately limited in some aspects of understanding and memory; concentration and persistence; social interaction; and adaptation.  (T. 125–27).  The ALJ assigned great weight to Dr. McClintock's opinions, finding them to be consistent with plaintiff's treatment records.  (T. 23–24).

Plaintiff argues that the ALJ committed the same reversible error identified by the Second Circuit in *Estrella*, in that here the ALJ only cited "individual and selected clinical findings in the treatment records . . . which he determined to be inconsistent" with the opinion of NP Grett.  (Pl.'s Br. at 14–15); *see Estrella v. Berryhill*, 925 F.3d at 97 ("Cycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").  On the contrary, in *Estrella*

the Second Circuit concluded that the treating physician rule was violated where the ALJ cherry-picked two treatment notes to support his conclusion that plaintiff's condition was less severe than Estrella's fluctuating, longitudinal treatment history actually suggested. *Id.* at 96–98.  Here, the ALJ did not "pick out a few isolated instances of improvement," but pointed to the results of almost every relevant mental examination status, which were largely normal, but for changes in plaintiff's mood.  (T. 499, 508, 570–71, 595, 620, 652, 694–95, 723, 1072, 1102, 1165, 1196–97, 1249). Moreover, in this case, unlike in *Estrella,* the plaintiff experienced no more than mild-to-moderate mental health symptoms, as indicated by his consistent subjective reports to treating providers during the relevant period of disability.  (T. 525, 531, 610, 618, 642, 651, 676, 693, 723, 1082, 1090, 1100, 1112, 1121, 1144, 1153, 1175, 1184, 1219–20).

Nor did the ALJ improperly discount the opinion of NP Grett based "solely on a perceived conflict with [her] own progress notes."  (Pl.'s Br. at 15).  Plaintiff argues to the contrary, citing cases from this circuit stating that "a treating physician's opinion may not be rejected solely on the basis that the opinions allegedly conflicted with the physician's own clinical findings." *Cirelli v. Comm'r of Soc. Sec.*, No. 1:19-CV-02709, 2020 WL 3405707, at *12 (S.D.N.Y. May 7, 2020), *report and recommendation adopted*, 2020 WL 3402433 (S.D.N.Y. June 19, 2020) (citing *Camille v. Colvin*, 652 F. App'x at 28).  Here, however, NP Grett's clinical findings were not the only basis on

which the ALJ determined that less-than-controlling weight should be afforded to her

restrictive opinion.  In addition, the ALJ relied on the opinions of consultative examiner

Dr. Gindes, medical experts Dr. Hennessey and Dr. McClintock, and the treatment

notes and clinical findings of record, all of which contradicted the opinion of NP Grett.

*See, e.g., Heaman v. Berryhill*, 765 F. App'x 498, 500 (2d Cir. 2019) (ALJ relied not on

own lay opinion, but on opinions of consultative examiner and medical expert in

discounting treating physician opinion); *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir.

2004) (treating physician's opinions not entitled to controlling weight when

inconsistent with opinions of several other medical experts).

Plaintiff points to the fact that there is other evidence of record that may have

supported NP Grett's restrictive limitations, including the opinions of consultative

examiner Amory Carr, Ph.D., and Stephan Gilman, M.D., who appears to have been

involved with plaintiff's outpatient substance abuse treatment in 2015.  (T. 1287–91,

1292–98).  The fact that other substantial evidence in the record may support a finding

of disability does not, in and of itself, render the ALJ's decision improper.  *See*

*Christine Lee S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1008 (CFH), 2022 WL 103108,

at *6 (N.D.N.Y. Jan. 11, 2022) (quoting *Rosado v. Sullivan*, 805 F. Supp. 147, 153

(S.D.N.Y. 1992) ("[E]ven where substantial evidence may support the plaintiff's

position and despite that the court's independent analysis of the evidence may differ

from the [Commissioner's][,]" the Commissioner's decision must be upheld if

supported by substantial evidence); *Johnson v. Astrue*, 563 F. Supp. 2d 444, 454 (S.D.N.Y. June 26, 2008) ("If the reviewing court finds substantial evidence to support the Commissioner's final decision, that decision must be upheld, even if substantial evidence supporting the claimant's position also exists.").  Because the ALJ's disability decision is supported by substantial evidence in the record, including the opinions of several acceptable medical sources, treatment records during the relevant period of alleged disability, and plaintiff's reported activities of daily living,[5] this court finds no basis to disturb the Commissioner's findings.

Plaintiff's argument with respect to the RFC determination is merely an extension of his claim that the ALJ should have found the opinion of NP Grett controlling, and adopted her restrictive findings into his RFC determination.  For the reasons previously cited, the ALJ did not err in his evaluation of the opinion evidence, and this court is not otherwise presented with any reasons why the functional limitations incorporated into the RFC determination do not adequately account for the extent of plaintiff's impairments, as opined by Dr. Gindes, Dr. Hennessey and Dr. McClintock.

Plaintiff's argument that the ALJ did not "identify any examining physician whose opinion was adopted in full" is equally unavailing.  (Pl.'s Br. at 18–19). At the outset, it appears to the court that the ALJ did, in fact, adopt all of the functional

---

[5]*See, e.g.*, T. 22, 1284.

limitations opined by Dr. Gindes.[6]  (T. 22, 732).  In any event, it is well settled that the ALJ is not required to formulate the RFC by adopting any one medical opinion in its entirety. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013); *see also Janet L. K. v. Saul*, No. 1:20-CV-0725 (GTS), 2021 WL 2592899, at *4 (N.D.N.Y. June 24, 2021) ("The ALJ need not adopt opinions in their entirety, but may instead adopt only those portions that she finds to be consistent with the record as a whole.").

WHEREFORE, based on the findings above, it is

ORDERED, that the Commissioner's decision is **AFFIRMED**, and plaintiff's complaint is **DISMISSED**, and it is

ORDERED, that judgment be entered for the **DEFENDANT.**

Dated:  March 7, 2022

Andrew T. Baxter
U.S. Magistrate Judge

---

[6]Plaintiff's argument is based on the fact that the ALJ assigned "little weight" to Dr. Gindes's conclusion that plaintiff's impairments may significantly interfere with his ability to function.  (Pl.'s Br. at 19 n. 4).  It appears that the ALJ interpreted Dr. Gindes's statement to assert that plaintiff's limitations were so severe as to preclude all work activity, which conclusion he found inconsistent with Dr. Gindes's own examination notes, along with plaintiff's longitudinal treatment record.  (T. 22–23).  Assuming, *arguendo*, that the ALJ had afforded great weight to Dr. Gindes's opinion in full, it would still constitute substantial evidence for the ALJ's final disability decision.  *See Redding v. Berryhill,* No. 16-CV-848, 2019 WL 91690, at *5 (W.D.N.Y. Jan. 2, 2019) (affirming Commissioner's denial of benefits where ALJ implicitly adopted medical expert's opinion that plaintiff's impairments "may significantly interfere with [his] ability to function," to the extent this conclusion was consistent with the ALJ's express acknowledgment that plaintiff's "cognitive defects [were] significant," but they were "not so severe as to preclude all work activity").